You are with what law firm? I'm with Barnault & Associates, PC, Your Honor. All right, but not on the brief. No, I don't believe that my name is on the brief, but I did file the oral argument response form. You did file what? I did file the appearance to do oral argument. And you're a member of this court? Yes, that's correct. Very good. Mr. Barnault, he filed a motion saying he was going to be out of the country today, is that right? That's correct. Am I remembering right? So you're filling in for him? Yes. The district court in this matter erred in a few fundamental ways. Most notably, the court misinterpreted federal pleading requirements in holding that it was insufficient to state a claim under the all-knowing Consumer Fraud Act for negligence, for implied contract, and for unjust enrichment. The district court also erred in concluding that it would be futile in allowing the plaintiffs to amend their complaint. Now, I know that the court is, as the court is aware, this case is now before the court for the second time. Previously, just from a general perspective, this is an MDL. There are six plaintiffs. One plaintiff, the MDL stems from a data breach that occurred during the summer of 2004. Plaintiffs alleged the breach was sophisticated, it was targeted, which is important when considering a data breach case. That defendants failed to take reasonable measures to secure their payment processing network, essentially that it should never have happened, and that plaintiffs and others were harmed as a result. Now, when we were before the court previously, the issue was standing. The court held that plaintiffs' homes had standing because he'd suffered, he'd been a victim of credit card fraud shortly after the breach. And with respect to the other plaintiffs who had shopped at compromised stores but had not suffered fraud, or didn't allege fraud, the court held that the plaintiff allegations just weren't enough to get over the hurdle, mainly based upon a 2007 GAO report that was cited in the prior complaint. Now, when plaintiffs went down after the mandate was issued, plaintiffs sought leave to amend their complaint to address the court's standing analysis. Shortly before that time, the defendants filed a motion to dismiss the plaintiffs' claims.  The court's ruling dismissal of the Holmes claims, Holmes alleges specifically the specific store where he purchased the product from by city and state. It is a compromised store that after notification of the breach was sent, that he checked his credit card statements. Shortly thereafter, he noticed a fraudulent credit card charge. He contacted his credit card company and canceled the card. Two weeks later, he received a new card. He also spent time monitoring his financial accounts. That's sufficient to allege harm under the Illinois Consumer Fraud Act. Does it not require some kind of damage, a financial harm, some kind of loss, under the claims that you have asserted in the complaint? Specifically, the Illinois Consumer Fraud Act requires actual damage. And so what's the actual damage here? Well, number one, the plaintiff's information was stolen. Number two, he's been a victim of credit card fraud, which is financial loss. Was there financial loss alleged in the complaint? He alleges that he was a victim of credit card fraud in the complaint, yes. What does he mean by that? It means that he was a victim of, I mean, that there was a fraudulent charge on his credit card statement shortly after the brief, after he shopped at a compromised store. But that doesn't necessarily mean there was financial harm to him. I would disagree that under the Consumer Fraud Act that that is financial harm. He's obligated to pay your credit card statements. And other courts have found it such that you're not obligated to plead unreimbursed loss or otherwise. So you're asking for an inference that because there was a fraudulent fee on his account, the reasonable inference is that he paid it? I would say that because of the stage of the litigation that there was a required inference, number one. And number two, more importantly, what the district court did is actually used a reverse inference. The district court inferred that the absence of a specific factual allegations was not sufficient to plead. And the primary case that the district court relied upon throughout the entire opinion was the Barnes & Noble decision in the district court, which has since been reversed. And most notably, in Barnes & Noble, there was an alleged credit card fraud. In the Lewert case, which is the P.F. Chang's case, one of the plaintiffs alleged that there was credit card fraud. There was no allegations. One of the plaintiffs did not allege credit card fraud at all. And in the Neiman Marcus case, that was an issue, too. And in both the P.F. Chang's case and the Lewert case, the courts found the plaintiff's allegations sufficient at the motion to dismiss stage to state claims under the Illinois Consumer Fraud Act. And just from a big-picture standpoint, Barnes & Noble was reversed. The decision that the district court relies upon. And the other decision, Michael's... Dieffenbach case? That's the Dieffenbach case, yes. And the other case that the district court relies upon is the Michaels case, primarily. And in the Michaels case, the court relied upon, in general allegations, that the plaintiffs will suffer harm, debit card and credit... debit card fraud as a result of the breach. But the individual plaintiffs in that complaint did not specifically allege credit card or debit card fraud. So at least at the motion to dismiss stage, the allegations are more than sufficient. Are you just arguing the ICF, the ICFA statutory claim? Well... Are you now also arguing the common law claim, in which case, as I read the Schnucks case, decided the same day as Dieffenbacher, and written by a judge who was on both panels, you're not consistent with Seventh Circuit law as to the common law claim? Well, I think we can address one first, but right now, specifically... But, yeah, but you throw everything at the wall and expect us to sort it out. Well, on your statutory claim, since that's what you're talking about first, I thought Dieffenbach involved an allegation that the person had a monthly out-of-pocket payment. Dieffenbach also... And the court said that's an actual injury, that's actual damage. The specific allegation of the Illinois plaintiff in Dieffenbach was that she incurred a fraudulent credit card charge and also she alleged mitigation expenses, which was a renewal of credit monitoring service. Right, but it was the latter that the court cited in saying there was actual damage. Well, I thought that the court had considered both, but... Well, it says right in the opinion, a monthly $17 out-of-pocket is a form of actual damage. It's real and measurable. Illinois does not require more. So what have you alleged here that's real and measurable? There was a fraudulent credit card charge on the plaintiff's... Well... Well, maybe they didn't pay her, but that's, again, it's an assumption. It's not supported by anything in the complaint or the briefs. And other cases that have considered it, including, I believe, the 11th Circuit and the Resnick case, has said that you're not required to plead unreimbursed losses. Now, with respect to the other, you know, moving on to the causation element of the courts... Now, you're still on the statutory claim? Still be on the statutory claim. The causation flows. The court previously found, when we were before, that the plaintiff's allegations were sufficient to allege that their information was stolen by the criminals. And I think it's... There's little question about that fact. But now, the district court here held that the plaintiffs failed to allege causation because they didn't allege a specific date when they shopped at the store, which just isn't... It's not required under the pleading standards. There's more than enough alleged to satisfy the causation standard for ICFA. Now, moving to the negligence claim, again, I think that the damages analysis is similar, though, you know, maybe it's slightly different with respect to negligence. The allegations are more than sufficient to establish harm, which is what's required under Illinois law, as a result of the breach. One of the arguments... How do you distinguish Schnucks, then? Well, I think that one of the important things that's argued in our breach that wasn't at issue was the collateral source doctrine with respect to negligence. And the doctrine, you know, under Illinois, as many states endorse it, is that benefits received by an injured party from a source wholly independent of and collateral to the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor. And that wasn't at issue in the Schnucks case. And if you apply the law as written in Illinois, it would bar any consideration of reimbursement or non-reimbursement here. In rejecting the collateral source argument in the lower court, the district court relied upon a decision that said, well, you can only consider amounts paid under the collateral source rule. But the decision, the Arthur decision, that the district court relied upon actually says to the opposite. In the Arthur decision, the court, because the collateral source rule has a substantive and evidentiary component, the Illinois Supreme Court, in that case, the individual had paid part because there was an insurance issue. They'd been billed, I think, for $15,000. Their insurance paid $10,000 because of an arrangement with a hospital. And the Supreme Court held that the jury could be instructed on the full amount billed. So the district court's interpretation of that ruling is just wrong. And defendants basically, I mean, they don't even try to argue that in their response briefs. I thought their argument was that the doctrine doesn't apply because Holmes never paid or was obligated to pay the fraudulent charge. And that that takes the situation out of collateral source doctrine. And there's no evidence of that fact, though. They're asking the court to consider things based upon nothing that's in the complaint or which the court, and then there's nothing that the court's taking judicial notice of. And as I think the Seventh Circuit recognized in Neiman Marcus, it's incorrect to assume that nobody's ever obligated to pay fraudulent credit card or debit card charges. That's just not the case. And for the court to make that assumption, if that's what happened at the motion to dismiss stage, was just incorrect. Now, as I'm. What about Doody and the Cooney case? The Cooney case is interesting because, well, number one. The Seventh Circuit, I think, then relied upon. There are two issues with the Cooney case, I think. Number one, the Cooney case incorrectly failed to. Well, whether it was correct or not, that's the Illinois law on the case on the issue. Well, it's an Illinois appellate court decision. I will note in Dieffenbach, the Seventh Circuit also disagreed with Cooney. Cooney's analysis of damages. And then the same day, Schnucks relied on. That's correct. But. All right. Well, you got to. Well, what are we to make of that? Moving forward. Number one. No, no. Stick to a specific claim. Yes. And say why Schnucks doesn't apply and Dieffenbach does. Because they were. Judge Hamilton is a very thoughtful and careful judge. And he was on both panels. And he wrote the second decision. And obviously didn't consider Schnucks as contrary to what he had joined in Dieffenbach that day. Yes, exactly. You can't just say, well, I, you know, forget forget Schnucks. I rely on Dieffenbach. For what? Well, in. Number one. I assume we're talking about the duty portion of this question. Yeah. So it's number one. There was a duty of reasonable care under Illinois law. That's not different than imposed by most states. That wasn't analyzed in Cooney. Number two. Cooney said there wasn't. That and and. Schnucks thought that. Well, I guess I guess Dieffenbach thought that was doubtful whether the Illinois Supreme Court would follow it. Yes. But I'm not. But obviously then Schnucks relied on it. Yes. Were they relying on it for something else? And if so, what? They were relying upon it for a different portion of the decision. But for the. But for what? I believe they relied upon it actually for the for the duty analysis, which was. Right. I thought it was for the economic. Yeah. It was also the economic loss doctrine. Which you just say, oh, that doesn't apply. And they and and and Schnucks use that as I read it. Not as carefully as you have no doubt. But I read it as saying that that the lack of duty. And and and recognized in Cooney results in the economic loss doctrine apply. Applying to this. Array of contractual relationships. OK, and I will note that the the statute that Cooney relied upon. Was revised to specifically state that holders of confidential information need to take reasonable measures to protect the type of information. But that's a statutory claim. You do sue under that statute. No, but that was what they relied upon. The Cooney decision relied upon the Illinois PIPA for its duty analysis. I don't think the Illinois legislature purported to modify Illinois common law. They created a they may or may not have created a private right of action under their new statute. But that's what the duty analysis rests upon is PIPA with respect to a specific duty. They look to the Illinois legislature. At the time, they reach notifications. Statute did not have language saying that store stores of information need to take reasonable measures. That law was since amended. So the grounds upon which Cooney rests are no longer in existence. OK. Morning, I please the court. Counsel for super value. I'm presenting argument today on behalf of both police. The outset like to address the injury issue that was discussed just now. Just a set or level set. Yes, this is the second time we've been before the court here. The last time the court considered the standing issue and in Judge Kelly's opinion. The court made clear that at the 12B6 stage, there would be a higher hurdle and a different test for whether or not the allegations in the complaint. The same complaint that was before the court then is before the court now. Whether the allegations in that complaint would meet the causation and injury requirements of stating a claim under Illinois law. That's what this court held in super value. Almost contemporaneously, the Scott trade decision came down. Judge Loken's decision saying the same thing under Illinois law. That there's a different and higher standard for 12B6 purposes than there is for Article 3 standing purposes in terms of whether the pleading passes muster. So the issue today isn't a standing issue. It's an Illinois law issue in terms of what kind of injuries required to state a claim. There is a lot of Illinois law on this point. The U case that we cited in our brief makes clear that as a matter of Illinois law to state a claim. And this applies not just to the ICFA claim, but to the negligence claim, to the contract claim. You need to allege a present legally cognizable injury. So risk of future injury doesn't get it done under any of the theories of liability here. Only a present legally cognizable injury would get it done. And we do have case law that was discussed just now that gives a lot of insight into what constitutes a legally cognizable injury. Whether it's a negligence claim, a contract claim, or an ICFA claim. First, standing alone, non-economic injury, inconvenience, annoyance, standing alone doesn't constitute a legally cognizable injury under Illinois law. Whether it's a contract claim or a negligence claim or a statutory claim under ICFA. I think Dieffenbach, which was just discussed at length, is illustrative on that. Because what the court said there, and I do think, Judge Loke, in the cases Dieffenbach and Schnucks can sort of be squared. But on this point... Tend to be sort of what? They can sort of be squared with one another. I don't think they're inconsistent, Schnucks and Dieffenbach. They have to be. Well, Dieffenbach... I mean, unless you think our colleagues on the Seventh Circuit don't know what they're doing. I think they know absolutely what they're doing. And I know they do. So it's our obligation to reconcile them, not just sort of. I'll reconcile them. Dieffenbach said that in regard to the injury issue, it wasn't inclined to follow Cooney. But on the duty issue, it was inclined to follow Cooney. So basically, that's why, in my view, they treated Cooney sort of consistently, the two cases, more than sort of. They did treat the cases consistently. What Dieffenbach says in regard to what's a legally cognizable injury under Illinois law, and this would apply, again, across the board to all the claims, is the non-economic injuries only become actionable where there is an actual economic injury, as Judge Colleton was suggesting earlier in his questions. I agree. What was dispositive in Dieffenbach in terms of there being an actionable, legally cognizable injury was that there was alleged there an actual out-of-pocket loss that that particular plaintiff paid out-of-pocket for the credit monitoring. That was the linchpin of the finding in Dieffenbach that an injury had been adequately alleged. Here, as Judge Kelly suggested, there is no allegation of any out-of-pocket loss. Now, I agree that the only way you could get there is, as Judge Kelly suggested, by making an inference that the fraudulent charge that was alleged in the complaint resulted in an out-of-pocket loss to plaintiff Holmes. Our view is that is not remotely a plausible inference because everybody in this courtroom knows that when a fraudulent charge shows up on your credit card, you aren't liable for the charge, and all you need to do is call your bank and have the charge reversed. So it's not plausible to infer from the mere fact of a fraudulent charge that there was liability on the charge and even less plausible to infer that the charge was paid. And it's particularly implausible to infer that here, where a plaintiff knows whether or not the charge was paid. And this court, in its original opinion, warned the plaintiff that the allegation of an unreimbursed charge would need to be made in order to state a claim, perhaps, and just alleging a fraudulent charge without alleging payment of that fraudulent charge wouldn't get it done. And yet what happened when we went back before Judge Montgomery was the plaintiff Holmes did move for leave to amend his complaint, but he never sought leave to amend to disclose whether or not that charge had been paid. Now, against all of that background, how is it remotely plausible to infer that that charge was paid? The only plausible inference from all of those facts is that it wasn't paid. And if that charge wasn't paid, there is no allegation in this complaint of any economic loss. And without any allegation of any economic loss, under all of the case law that we have, Dieffenbach, Schnucks, there is no claim. Whether it's a contract claim or a negligence claim or a NIFA claim. On causation, I think the case law, if anything, is clearer. We have, actually, a fair amount of case law as to what needs to be pleaded at a motion to dismiss stage for 12B6 purposes in order to plead causation in a data security case. The nationwide case that we cite in our brief actually goes through the case law on this. I acknowledge there is no Eighth Circuit case on this, but we've got Resnick from the Eleventh Circuit. We've got Stollenwerk from the Ninth Circuit. We've got the Brush case from Florida and the nationwide case from Ohio. And those cases all are clear in saying that in order to plead causation in a data security breach case for 12B6 purposes, you need to do two things. First, you've got to make time and sequence allegations that establish that it's at least possible that your identity theft, whether it's a fraudulent charge or whatever, was caused by the event in question. What are time and sequence allegations? Those are allegations that say, basically, my injury occurred at a point in time where sequentially the data breach could have caused it. What would that mean here? That would mean here that what was required, what is required under these cases, is that Plaintiff Holmes alleged, I shopped at a Super Value store during the period of the intrusion at a point in time prior to when the fraudulent charge showed up on my account. If you allege that, then it's at least possible that the Super Value event caused the fraudulent charge. We don't have those allegations here. There is no allegation in this complaint that Plaintiff Holmes shopped during the period of the intrusion. There's not even an allegation that he shopped at the Super Value store in question prior to the fraudulent charge being made on his card. Without those sort of baseline time and sequence allegations under the cases I just ticked off, he fails to plead causation for 12B6 purposes. But even if he had pleaded the time and sequence elements, which actually were pleaded in those cases that I ticked off, Resnick and Stollenwerk and the other cases hold that that's not enough. You also have to then make additional factual allegations that convert the causation from not merely possible, which is what the time and sequence allegations do, but to plausible. And what those allegations would be would sort of vary from case to case, depending on the type of fraud we're talking about, the type of data breach we're talking about. Certainly in a payment card data breach like this one, you'd expect allegations that go some part of the way to exclude the possibility of the fraud having been sourced from another merchant's breach. This was 2014 at this very same time. Target breach, Home Depot breach, Neiman Marcus breach, P.F. Chang's breach. All these breaches that you're reading about in the cases, they all occurred at this exact same time. None of those allegations appear anywhere in this complaint. So for both reasons, there's a failure to plead causation here. Council alluded to the P.F. Chang's case and the Neiman Marcus case, which survived motions to dismiss on causation grounds. Those are minute orders. There's no reasoning in either of those cases. But if you actually go back to the complaints in those cases, which we did, and we cited the relevant portions of those complaints in our brief, you'll see that in those complaints an out-of-pocket loss was alleged in each one of those complaints. As Judge Kelly suggested earlier, you can go from start to finish in this complaint, and you'll find no allegation of any economic loss. That's the key distinction. Could you address the denial of the plaintiff's leave to amend the complaint? Sure. As I read what the district court did, it found that it was both futile and based it on undue delay. Is that how? Well, I think, Your Honor, I think the gating issue there is the relevant standard. And this came up in the reply brief, so I did want to address that. So what controls when you make a motion like this post-judgment, this is a post-judgment motion, is Rule 60B. It's not a 15A test. Now, that's not what we said in Roop and again in Nefer Nefer. Well, we said that you cannot ignore Rule 15A, even though the timing is 59E, 60B. Understood. And therefore, 15A is not the governing standard. It can't be ignored. And absolutely, absolutely. But my point is- Both sides misstate our case law. Okay. Well, my point is that 60B is the controlling standard, and they make no argument they meet 60B here. And I think there is a different standard between 15A and 60B. Nonetheless, if we're looking at it under Kneffer Nefer, which I've learned to pronounce, this, I think, falls squarely in Kneffer Nefer. If we look at it, you know, our panel is required to look at it. That's controlling authority. That's not like Schnucks and- Looking at it under Kneffer Nefer, Kneffer Nefer holds that undue delay in bringing the motion is sufficient to deny the motion, where, at a minimum where, you're not depriving the plaintiff of a hearing on the merits. That's how I read Kneffer Nefer. Kneffer Nefer makes the point that there's kind of two lines of cases, but you can square them off by looking at the difference in the one line of cases being that the plaintiff wasn't being deprived of a hearing on the merits. Now, here, the dismissal is a subject matter jurisdiction dismissal. So these 15 plaintiffs were dismissed without prejudice. That dismissal does not deny them their claim on the merits. So under Kneffer Nefer, the undue delay that the district court found would be sufficient standing alone to deny the motion. Now, there's also Judge Kelly's decision in Ashe, which looks at the same issue. And in Judge Kelly's decision in Ashe, that decision reads that undue delay is sufficient ground to deny the motion, even where the plaintiff would be deprived of a hearing on the merits. Now, that's not this case because the dismissal here is a subject matter jurisdiction dismissal. So I think under Kneffer Nefer, absolutely, Judge Montgomery had discretion to deny the motion for undue delay reasons standing alone. Now, the futility argument, though, I think is an independent justification for the denial of the motion. And you don't even have to look at it in terms of whether the futility existed from a standing perspective because, as Judge Montgomery found, there was certainly futility here from a 12B6 failure to set a claim perspective because the only injury that's alleged by those 15 plaintiffs is a risk of future injury, which is not actionable under Illinois law under U, and inconvenience type of injury not accompanied by out-of-pocket loss, which under Dieffenbach is not actionable. So the injury alleged by the 15 isn't actionable, leave aside standing, isn't actionable under Illinois law. So the futility finding by Judge Montgomery on that point is clearly correct. See I'm out of time. Happy to answer any other questions that the Court may have. Thank you. Thank you, Your Honor. I think, let's see, Mr. Shork, I think you used your time. I'll give you a couple minutes for rebuttal if you'd like. Thank you. I'll just address a few points that were raised. The first one is the argument with respect to opposing counsel argues that you need to plead unreimbursed loss. Courts have come out the other way on that. I know the Equifax Court in Georgia just issued an opinion at the end of January expressly rejecting that approach, and a number of other courts have done so as well. I know when I was up here before I said the Resnick decision in the 11th Circuit expressly held as such, and that's the prevailing case law is you're not required to plead unreimbursed loss because to assume that a plaintiff who incurs a fraudulent charge, whether it's a credit card or debit card charge, was reimbursed fully, that's just not nowhere in the record. So on the other issue, the denial of the motion for leave to amend, from our perspective that was just incredibly unjust. We responded to the court's decision that we didn't plead enough to get over the standing threshold. We added additional and more timely allegations as to the frequency of fraud resulting from this type of attack, which is about 40 percent in the first year, notwithstanding all of the other years. You know, the fact that with a breach like this, it can go on for year after year. The court refused to even consider those allegations because of a denial of a Rule 59 motion in the lower court. The fact that we brought our proposed motion to amend a month and a half or so after the mandate was issued because we were waiting for the status conference, which had been scheduled, but the defendants rushed in and filed a motion to dismiss without leave of court, to me that was a plain abuse of discretion. And we believe that given the nature of the breach and those additional allegations that the plaintiffs, the 15 other plaintiffs' allegations fall within the realm of jurisprudence of the other circuit courts that they have standing to pursue their claims. Thank you for your time. Is there any further questions? Thank you, counsel. Thank you. The case has been well briefed and argued, and we'll take it under advisement. Thank you.